UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND, and
HOWARD MCDOUGALL, trustee,                          Case No. 04-73593

    Plaintiffs,                                     Honorable John Corbett O'Meara

v.

GENERAL MATERIALS, INC., d/b/a
WHOLESALE MATERIALS CO.,

    Defendant.
_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT'S APRIL 7, 2006
RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART PLAINTIFFS' APRIL 7, 2006
RENEWED MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on defendant General Materials' April 7, 2006 renewed motion for partial summary judgment and plaintiff Central States' April 7, 2006 renewed motion for summary judgment. The parties filed responses and replies, and oral argument was heard August 10, 2006.

**BACKGROUND FACTS**

This is an ERISA action brought by plaintiff Central States Pension Fund ("Fund") to collect pension benefits totaling $656,769 plus interest, which the Fund claims is owed by defendant General Materials, a family-owned lumberyard in Jackson, Michigan. General maintains that nothing is owed because the last collective bargaining agreement ("CBA") with Local Union 164 of the International Brotherhood of Teamsters expired December 31, 1993. General's counterclaim is for the $44,000 it has paid in pension contributions to Plaintiffs since 1999 for two employees

who were originally covered under previous CBA's with the Union  One of those employees has since retired.  Only a small portion of the Fund's claim, less than $50,000, relates to the period before the December 1993 termination of the CBA.

Beginning in the late 1960's, General was required to make contributions on behalf of certain employees performing covered work pursuant to its labor agreements with Local 164.  The most recent CBA between General and Local 164 was effective January 1, 1991.  The 1991 CBA provided, "The terms of this Agreement shall apply to all employees in the classifications of work set forth herein and shall cover all accretions to a route or relocations of bargaining unit operations, including newly established required warehousing, transportation or processing operations of the employer."  Ex. 6 to Plaintiffs' Ex. A.

The duration clause of the 1991 CBA provided that the "Agreement will remain in full force and effect from January 1, 1991, to and including December 31, 1993 and shall continue in full force and effect from year to year thereafter <u>unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.</u>"  <u>Id</u>. (emphasis added).  General claims that a notice to terminate was served more than 60 days before December 31, 1993, on Local 164; however, neither General nor Local 164 notified the Fund of the termination of the 1991 CBA before Plaintiffs began its audit in 2004.

At the time the 1991 CBA was signed, General also signed a form Participation Agreement ("PA") that was drafted by Central States.  The PA's duration clause provided,

> This agreement shall continue in full force and effect until such time as the Employer notifies the Fund(s) by certified mail (with a copy to the Local Union) that the Employer is no longer under a legal duty to make contributions to the Fund(s).  The Employer shall set forth in the required written notice to the Fund(s) the specific basis upon which the Employer is relying in terminating its obligation to make

2

> contributions to the Fund(s). The Employer expressly agrees and hereby acknowledges by the signing of this Agreement that its obligation to make contributions to the Fund(s) shall continue until the above-mentioned written notice is received by the Fund(s) and the Trustees acknowledge the Employer's termination in writing.

¶5c of Ex. 7 to Plaintiffs' Ex. A. No <u>written</u> notice of termination was provided to Central States until General's November 2, 2005 letter requesting a refund of the contributions paid after 1995.

The 1991 PA also contained a dispute resolution clause that provided that all disputes arising between the Employer and the Fund(s) would be submitted for resolution to the Trustees of the Fund(s). <u>Id.</u> at ¶14. Furthermore, according to the Pension Fund Trust Agreement incorporated into the 1991 CBA and the 1991 PA, "The Trustees are vested with discretionary and final authority in making all such decisions . . . ." Specifically included in those are decisions regarding whether an employer is entitled to a contribution refund.

In this case, General remitted contributions to Central States after the December 31, 1993 termination of the 1991 CBA on behalf of James Smith until he retired in January 1995 and on behalf of Roy Swihart through October 1, 2005. These contributions were paid in accordance with monthly bills which contained a certification clause that read:

> The employer hereby reaffirms his obligation to make contributions required by the collective bargaining agreement and further represents that all employees eligible to participate in the Fund, in accordance with the rules of the Fund and the 'Employee Retirement Income Security Act of 1974', are being reported and only those eligible employees are being reported.

Plaintiffs' Ex. A, ¶27.

The 1991 CBA and the 1991 PA increased the contribution rate and moved General employees from Benefit Class 15 to Benefit Class 16. As a result of the class improvement and the additional year of credit earned for 1994, employee Smith crossed a pension credit threshold of 30 years,

3

thereby increasing his monthly benefit entitlement from $444.50 per month to the $2,000 per month he has received since he retired in January 1995. Employee Swihart has not yet retired. His monthly benefit entitlement also increased significantly, from $705.87 at age 65 to $1,621.32 at age 62, as a result of the credit earned from 1994 to 2005. Plaintiffs' Ex. A at ¶ 46. In addition, three other employees who retired in 1992 and 1993 received significant increases as a result of Central States' acceptance of the 1991 CBA and 1991 PA, totaling the following amounts: employee Bonney, $108,927; employee Sheehan, $171,000; and employee Eastman, $120,700.

In 2004, Central States decided to audit defendant General's payroll records to verify that all required contributions had been paid. General refused to provide access to payroll records other than Swihart's because it claimed that it had orally agreed with Local 164 that General would be required to remit contributions on behalf of only Smith and Swihart and that any new hires would not be subject to the CBA.

During the course of this lawsuit, an audit was performed. Plaintiffs claim that the audit revealed that there were employees performing work covered by the labor contracts before the December 31, 1993 termination of the 1991 CBA that were not reported to Central States; therefore, $48,254 in contributions, excluding interest, are owed to Central States. In addition, Plaintiffs claim that the audit revealed 40 additional employees who worked for General after December 1993 who had no contributions paid on their behalf; therefore, an additional $628,515, excluding interest is allegedly owed.

In a November 2, 2005 letter, General asserted that the contributions it had paid after 1993 were paid by mistake, since Plaintiffs contend that there was no enforceable oral agreement, and requested the return of the $44,000 in contributions paid after November 1995 (the "refund

4

request"). General also advised Central States in writing for the first time that as of November 1, 2005, it was ceasing to remit any further contributions to Central States.

On December 15, 2005, the Board of Trustees denied the refund request. The Trustees concluded that General was contractually obligated to contribute to Central States after 1994 because: 1) the 1991 PA remained in effect as a result of General's failure to provide the required notice of termination; and 2) General reaffirmed its obligation to contribute under the 1991 CBA by making monthly payments in accordance with the bills which contained the certification clause. The Trustees further concluded that there could be no refund because Central States had paid employee Smith over $200,000 in pension benefits to which he would not be entitled if General's duty to contribute had ended in 1993 and Swihart's benefit expectation would be drastically reduced.

Plaintiffs filed this lawsuit in the United States District Court for the Northern District of Illinois on March 29, 2004. The case was transferred to this court September 15, 2004. The First Amended Complaint was filed October 24, 2005; and Defendant filed a counterclaim November 9, 2005. The Second Amended Complaint was filed December 29, 2005; and the First Amended Counterclaim was filed January 25, 2006. This memorandum opinion and order addresses the parties' April 7, 2006 renewed motions for summary judgment.

## **LAW AND ANALYSIS**

The parties agree that the arbitrary and capricious standard applies to the Trustees' decision that General owed contributions from 1993 as well as the Trustees' denial of General's request for a refund. Plaintiffs' br. at 8; Defendant's br. at ¶ 22 of counterclaim; see Bagsby v. Central States Pension Fund, 162 F.3d 424, 428 (6th Cir. 1998).

Although defendant General claims that it sent written notification to Local 164 in a timely fashion to terminate the 1991 CBA at the end of the term (December 31, 1993), there is no dispute that General failed to send written notification to Plaintiffs. Defendant's argument that Local 164 serves as an agent for the Funds was rejected by the United States Court of Appeals for the Sixth Circuit in Central States Pension Fund v. Behnke, Inc., 883 F.2d 454, 460 (6th Cir. 1989).

In addition, General argues that an oral agreement existed between General and the local to terminate the CBA and that General agreed to continue contributions for two employees, Smith and Swihart, until their retirements. Fred Schmid, the owner of General, is no longer competent to answer questions regarding that agreement; therefore, Plaintiffs argue that Defendant has no evidence of this oral contract. However, there is indeed evidence of such an agreement if one looks to the way the employer, the local, and the pension funds have all conducted themselves during the relevant time period. All of their conduct shows that no one believed a CBA was in effect after the termination of the 1991 CBA on December 31, 1993; and the parties all acted accordingly.

For example, defendant General hired over 40 employees during the time period Central States contends would have been covered by a hypothetical CBA. For each of those employees, General never withheld union initiation fees or dues, never paid those employees according to the union scale of the 1991-93 agreement, never recognized or dealt with a union steward, never maintained or posted a seniority list, never notified the union of discipline, never was involved in a grievance in regard to those employees, never observed the just cause termination requirement of the 1991-93 agreement, never made contributions to the Welfare Fund, and never made contributions to Central States. For the sole remaining employee who was a union member under the 1991-93 CBA, General has deducted union dues, paid pension contributions, and paid welfare fund contributions.

Over the years, General has adopted and contributed to its own pension plan and profit sharing plans, making $494,703.12 in contributions for those 40 employees for which Central States is seeking contributions. In addition, in late March or early April in 1997, Fred Fadely, a General employee, attempted to get fellow employees to join the union. Local 164 secretary/treasurer Dennis Hands met with four employees who signed authorization cards. Ultimately, however, the majority of General workers were not interested in the union; and no contract was ever signed and no deductions were taken for those four employees.

On January 29, 2001, General was contacted by Richard Amos on behalf of Local 164 regarding the Welfare Fund's need to have a signed PA. General refused to sign but indicated that it would continue to make contributions for Swihart. On October 31, 2002, General received a request for an audit from the Welfare Fund; and General provided only materials for Swihart. On December 23, 2002, General received a letter indicating "the auditor's review revealed no discrepancies in your reporting to the fund." Defendant's Ex. S. On January 23, 2004, Central States requested an audit of General; and General again provided materials only for Swihart. Central States then filed this lawsuit.

Both parties rely on Central States Pension Fund v. Behnke, Inc., 883 F.2d 454 (6th Cir. 1989). Defendant Behnke was obligated to contribute funds to the same group of plaintiffs as this case, Central States. The amount in dispute was less than $140,000, which Central States claimed was delinquent for only a one and one-half year period. In this case, Central States claims that over $650,000, excluding interest, is delinquent for a period of time dating back to and including the mid-1970's. Judge Wellford, in his dissenting opinion in Behnke, found the award was "both unjust and

unreasonable" in light of Behnke's "apparent good faith reliance upon an oral CBA found to be unenforceable."

In this case, defendant General continued to make contributions in good faith for the two employees who were covered under the 1991 CBA until they retired. In other words, General's conduct, as well as the conduct of Central States in accepting those contributions and questioning no others until an audit was performed after this lawsuit was filed, argues in favor of an understanding between the parties that the 1991 CBA did not remain in full force and effect by way of the 1991 PA.

Moreover, in Behnke, the parties were in between collective bargaining agreements at all relevant times. In this case, the parties never entered into another CBA after the 1991 agreement, which expired by its terms on the last day of 1993.

The Sixth Circuit has also held that the "discovery rule" for accrual of limitations periods applies to ERISA actions to collect delinquent contributions to employee benefit funds. Michigan United Food and Commercial Workers Unions v. Muir Co., Inc., 992 F.2d 594 (6th Cir. 1993). In Muir, the court considered whether the action was barred by Michigan's six-year statute of limitations period for contracts. In that case the plaintiffs sued for underpaid contributions in the amount of about $20,000. The court affirmed the district court's decision that the funds' claims had accrued more than six years before the funds filed suit. In applying the discovery rule, the central question became whether the fund *should have* become aware of the defendant employer's underpayments.

The fund argued that it had no particular and specific reason to doubt the accuracy of the employer's reports until it completed its audit and that the six-year statute of limitations should have

8

begun to run from that point in time.  The court found, "[I]t is apparent that the crucial question in this case is whether the Funds had sufficient notice of probable discrepancies in the employer's contribution reports that the concept of due diligence required them to investigate long before they did." Id. at 599. "The facts in this case show that the Funds, by conducting an internal audit using information already within their possession, had the ability to discover probable discrepancies and underpayments at any time after the employer's monthly reports were received." Id. at 599-600.

In defining the concept of "due diligence," the court found it "notable that the Welfare Fund in this case was hardly in the position of a 'typical lay person.'  Instead, the Funds' auditors were experts in the accounting methods required to detect the kinds of employer reporting errors involved in this case . . . ." Id. at 600.  "Compared to the typical lay person, the Welfare Fund had superior personnel and equipment with which to detect foreseeable employer error." Id.

Just as in Muir, Plaintiffs in this case received monthly contributions from General.  With due diligence, Plaintiffs should have noticed that there was a 90% reduction in individuals for whom contributions were being made; that no signed billing statements affirming General's obligations under any CBA were received after February 2, 1995; that no new employees were reported after November 1993; that no new contract was signed even though a new one had been signed at the expiration of each former contract; that the contribution amount itself never increased after 1993; and that ultimately the number of covered employees had dwindled to only one.

This lawsuit was filed in the United States District Court for the Northern District of Illinois on March 29, 2004.   Plaintiffs argue that the court should apply Illinois' 10-year statute of limitations to this action; however, the Sixth Circuit has held that the statue of limitations of the state

in which the action is located governs. Central States Pension Fund v. Kraftco, Inc., 799 F.2d 1098 (6th Cir. 1986). Michigan law provides a six-year statute of limitations period to contract actions.

Applying the six-year statute of limitations to this case, all of Plaintiffs' claims are time barred. With due diligence, Plaintiffs should have become aware of any discrepancies long before March 29, 1998. General had stopped making contributions for employees other than Swihart and Smith as of January 1, 1994. Therefore, the decision of the Board of Trustees that General was contractually obligated to contribute to Central States after 1994 is arbitrary and capricious. The court will deny Plaintiffs' motion for summary judgment on all claims except Defendant's counterclaim.

Defendant General's counterclaim seeks a refund of the $44,000 it paid Plaintiffs for Swihart and Smith during the relevant time period. However, Defendant cannot have it both ways. As Defendant continued to pay into the Fund for the benefit of these two employees, the employees realized a significant increase in the pension benefits paid to them and to be paid to them by the Fund. Therefore, the decision of the Board of Trustees that General was not entitled to a refund was not arbitrary and capricious. Plaintiffs are entitled to summary judgment on Defendant's counterclaim.

Defendant's renewed motion for partial summary judgment seeks summary judgment on Count II of Plaintiffs' Second Amended Complaint, which makes a claim for the allegedly delinquent contributions. Essentially, Defendant's motion is a cross motion for summary judgment because the only other count in Plaintiffs' Second Amended Complaint is for the audit which has now been performed. For the reasons set forth above, Defendant is entitled to summary judgment on all claims except its counterclaim.

**ORDER**

It is hereby **ORDERED** that Plaintiffs' April 7, 2006 renewed motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Defendant's April 7, 2006 renewed motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART.**

s/John Corbett O'Meara
United States District Judge

Dated:  February 12, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 13, 2007, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager

11